1

2

3

4

5

6

7

8

9                       UNITED STATES DISTRICT COURT

10                   FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12   LISA SWAIN, an individual on behalf of          No.  1:21-cv-00197-SKO
     herself and others similarly situated,
13                                                    **ORDER VACATING HEARING AND**
                       Plaintiff,                     **GRANTING MOTION FOR FINAL**
14                                                    **APPROVAL OF CLASS ACTION**
           v.                                         **SETTLEMENT AND GRANTING**
15                                                    **MOTION FOR ATTORNEY'S FEES,**
     ANDERS GROUP, LLC,                               **COSTS, SERVICE AWARD, AND**
16                                                    **ADMINISTRATIVE EXPENSES**
                       Defendant.
17                                                    (Docs. 30 & 31.)

18

19

20         Pending before the Court is Plaintiff's motion for final approval of a class action settlement

21   and motion for attorney's fees, costs, service award, and administrative expenses.  (Docs. 30 & 31.)

22   No objections to the proposed settlement terms were received by the settlement administrator (*see*

23   Doc. 31-3 at 2) or filed with the Court.  Accordingly, the hearing for the motions, currently set for

24   May 3, 2023, will be vacated.

25         For the reasons set forth below, the Court will grant final approval of the class action

26   settlement and will grant the motion for the attorney's fees, costs, service award, and administrative

27   expenses.

28

                                                  1

## I.      BACKGROUND

The Court previously summarized Plaintiff's allegations in its October 6, 2022, order granting Plaintiff's motion for preliminary approval of a class action settlement and conditional class certification, (Doc. 29), and will not repeat the factual background in this order.  Following the grant of preliminary approval in this action, on November 17, 2022, Plaintiff filed the pending motion for attorney's fees, costs, service award, and administration expenses, and on March 29, 2023, Plaintiff filed the pending motion for final approval of the parties' class action settlement.  (Docs. 30 & 31.)  In support of the motions, Plaintiff has submitted declarations from Plaintiff, class counsel, and the settlement administrator in this action.  (Docs. 30-2, 31-2, 31-3.)  As of the date of this order, no objections to the settlement were received by the settlement administrator or filed with this Court, and no class members have opted out of the settlement.  (Doc. 31-3 at 2.)  Anders did not oppose either motion.

Under the proposed settlement, Anders will pay a total of $368,500 (the "Gross Settlement Amount" or "GSA").  (Doc. 31-1 at 5.)  Assuming the parties' proposed allocations are awarded in full, approximately $228,598 (the "Net Settlement Amount" or "NSA") will be available for distribution to participating settlement class members.  (*See* Doc. 31-1 at 5–6.)

## II.      FINAL CERTIFICATION OF SETTLEMENT CLASS

The Court conducted an examination of the class action factors in the order granting preliminary approval of the settlement and found the factors warranted certification.  (Doc. 29 at 10–16.)

The Court's findings on these issues have not changed, and no objections to class certification were raised.  Accordingly, there is no need for the Court to repeat the analysis on these issues here.  *See, e.g., Harris v. Vector Marketing*, No. C–08–5198 EMC, 2012 WL 381202 at *3, at *7 (N.D. Cal. Feb. 6, 2012) ("As a preliminary matter, the court notes that it previously certified . . . a Rule 23(b)(3) class . . . . [Thus, it] need not analyze whether the requirements for certification have been met and may focus instead on whether the proposed settlement is fair, adequate, and reasonable."); *In re Apollo Group Inc. Securities Litigation*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677 at *4 (D. Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23[,]

1  . . . and hereby reconfirms its order certifying a class").

2      The Court hereby confirms its prior order and certifies the following class (the "Class") of

3  159 individuals (the "Settlement Class Members" or "Settlement Class"): "[a]ll non-exempt

4  employees employed by Defendant [Anders Group, LLC] in California who, at any time between

5  February 17, 2017 and February 13, 2022, worked one or more workweeks in which they were paid

6  overtime and received per diem pay."[1]  (Doc. 29.  *See* Doc. 31-1 at 4.)  In addition, for the reasons

7  stated in the order granting preliminary approval, Plaintiff Lisa Swain is confirmed as class

8  representative; Matthew B. Hayes and Kye D. Pawlenko of Hayes Pawlenko LLP are confirmed as

9  class counsel; and CPT Group, Inc. ("CPT") is confirmed as the settlement administrator.  (Doc.

10  29 at 13–14, 28.)

11      **III.      FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

12      Class actions require the district court's approval prior to settlement.  Fed R. Civ. P 23(e).

13  To approve a settlement, a district court must: (i) ensure notice is sent to all class members; (ii)

14  hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) confirm

15  that the parties seeking approval file a statement identifying the settlement agreement; and (iv) be

16  shown that class members were given an opportunity to object. Fed. R. Civ. P. 23(e)(1)-(5).  The

17  parties filed the settlement agreement on January 18, 2022 (Doc. 18-4), and Class Members were

18  given an opportunity to object on or before December 27, 2022.  (Doc. 31-1 at 8.)  Neither CPT

19  nor the Court received any objections, timely or otherwise, to the settlement.  (Doc. 31-3 at 2.)  The

20  Court now turns to the adequacy of notice and its review of the settlement following the final

21  fairness hearing.

22      **A.      Notice**

23      Adequate notice of the class settlement must be provided under Rule 23(e).  *Hanlon v.*

24  *Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); *see also Silber v. Mabon*, 18 F.3d 1449, 1453-

25  54 (9th Cir. 1994) (noting that the court need not ensure all class members receive actual notice,

26

27  ───────────

[1] The Settlement Agreement does not provide for certification and settlement of the FLSA claim.  Instead, it provides

28  that Plaintiff will dismiss without prejudice the FLSA claim alleged in the operative complaint.  (*See* Doc. 31-1 at 5; Doc. 18-4 at 20.)

1   only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No. 4:13-cv-03962-HSG,

2   2016 WL 107574, at \*3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort'

3   be made to reach all class members, it does not require that each individual actually receive

4   notice."). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient

5   detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"

6   *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson*

7   *Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the

8   class should alert class members of "the opportunity to opt-out and individually pursue any state

9   law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025.

10   The Court previously reviewed the notice provided in this case at the preliminary approval

11   stage and found it to be satisfactory. (Doc. 29 at 25–26.) Class counsel filed the declarations of

12   Tarus Dancy and William Argueta of CPT in support of the motion for final approval and fee

13   motion. (Docs. 31-3, 30-2 at 13–17.) Following the grant of preliminary approval, on October 19,

14   2022, CPT received the class data file from Anders' counsel, which contained the names, last

15   known mailing address, social security numbers, employee number, email address, phone numbers,

16   workweeks, double-time hours, and over-time hours worked during the class period and PAGA

17   class period for each Class Member. (Doc. 30-2 at 15.) CPT finalized a class list of 159 individuals.

18   (*Id*.) In preparation for mailing, the class list was processed against the National Change of Address

19   ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of

20   updating and confirming the mailing addresses of the Class Members before mailing the notice

21   packets. (*Id*.) The NCOA contains updated addresses for any individual who had moved in the

22   previous four years and notified the USPS of their change of address. (*Id*.)

23   On October 26, 2022, CPT mailed the notice packets via U.S. First Class Mail to the 159

24   individuals contained in the class list. (Doc. 30-2 at 15.) A copy of the notice packet was attached

25   to the declaration of Tarus Dancy as an exhibit. (*See id.* at 19–22.) The notice packet describes

26   the claims involved, what the settlement provides, what Class Members are giving up in exchange

27   for the settlement payment, each Class Member's estimated payment from the settlement, and how

28   the Class Member will receive the payment. (*See id*.) As of March 28, 2023, 20 notice packets

1    have been returned to CPT as undeliverable, and two packets were forwarded directly by the USPS

2    to a forwarding address.  (Doc. 31-3 at 2.)  Accordingly, CPT performed a computerized skip trace

3    on the returned notice packets to obtain an updated address for the purpose of re-mailing the notice

4    packet.  (*Id.*)  As of March 28, 2023, a total of eight notice packets have been deemed undeliverable

5    and no updated address was found from the skip tracing.  (*Id.*)

6         To opt out, the notice provides that each Class Member submit an "'Opt-Out Letter' directly

7    to the Claims Administrator."  (Doc. 30-2 at 21.)  The notice further provides the "Opt-Out Letter

8    must be (1) signed; (2) include your full legal name, home address, telephone number, and last four

9    digits of your social security number; (3) express your intention to opt-out of the settlement; and

10   (4) be postmarked no later than December 27, 2022.  (*Id*.)  As for objections, the notice provides

11   that if a Class Member believes that the settlement should not be approved by the Court for any

12   reason, they "must mail a written objection to the Claims Administrator."  (*Id*. at  22.)  The written

13   objection "must contain a statement of your objection to the settlement, accompanied by legal and

14   factual support, if any, as well as "your full name, home address, telephone number, and last four

15   digits of your social security number," and "must be postmarked no later than December 27, 2022."

16   (*Id.*)

17        As of March 28, 2023, CPT has not received any requests for exclusions or any objections

18   to the settlement.  (Doc. 31-3 at 2.)  Therefore, all 159 class members are participating in the

19   settlement.  In light of the foregoing, the Court accepts the reports of the settlement administrator

20   and finds that CPT provided adequate notice, thereby satisfying Federal Rule of Civil Procedure

21   23(e)(1). *Silber*, 18 F.3d at 1453-54; *Winans*, 2016 WL 107574, at \*3.

22        **B.    Final Fairness Determination**

23        At the final approval stage, the primary inquiry is whether the proposed settlement "is

24   fundamentally fair, adequate, and reasonable."  Fed. R. Civ. P. 23(e)(2); *Lane v. Facebook, Inc.*,

25   696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole,

26   rather than the individual component parts, that must be examined for overall fairness." *Hanlon*,

27   150 F.3d at 1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th

28   Cir. 1982)); *see also Lane*, 696 F.3d at 818.  Having already completed a preliminary examination

of the agreement, the Court reviews it again, mindful that the law favors the compromise and settlement of class action suits. *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Churchill Vill.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625. Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [they are] exposed to the litigants and their strategies, positions, and proof." *Staton v. Boeing Co*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964-67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill.*, 361 F.3d at 576 n.7.

Consideration of the *Churchill* factors alone is not sufficient to survive appellate review. *See Briseño v. Henderson*, 998 F.3d 1014, 1022-26 (9th Cir. 2021) (holding that the revised Rule 23(e) requires district courts "to go beyond our precedent" and mandates consideration of "the *Bluetooth* factors" to all class action settlements, regardless of whether settlement was achieved before or after class certification); *see also* Fed. R. Civ. P. 23(e)(2)(C)-(D). Under the revised Rule 23(e), "district courts must apply the *Bluetooth* factors to scrutinize fee arrangements . . . to determine if collusion may have led to class members being shortchanged." *Briseño*, 998 F.3d at 1026. The so-called *Bluetooth* factors—also referred to as "subtle signs" of collusion—include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;" (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," or a provision under which defendant agrees not to object to the attorney's fees sought;

and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted). "The presence of these three signs is not a death knell— but when they exist, 'they require[] the district court to examine them, . . . develop the record to support its final approval decision,' and thereby 'assure itself that the fees awarded in the agreement were not unreasonably high.'" *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).   Thus, while this Court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard, and in order "[t]o survive appellate review . . . [it] must show it has explored comprehensively all factors and must give a reasoned response to all non-frivolous objections." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021) (quoting *Allen*, 787 F.3d at 1223-24).

1.    <u>Strength of Plaintiff's Case</u>

When assessing the strength of a plaintiff's case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of th[e] litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989).  The court cannot reach such a conclusion because evidence has not been fully presented. *Id.*  Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

As described in the motion for preliminary approval of the class settlement, a "key issue in dispute underlying every claim in this lawsuit is whether or not Anders' housing and meals and incidentals per diem payments qualify as the type of reasonable payments for traveling expenses, or other expenses, incurred by an employee in furtherance of his employer's interest and properly reimbursable by the employer that may be excluded from the regular rate."  (Doc. 18-1 at 25 (internal quotation marks omitted); *see also* Doc. 18-3 at ¶ 30; Doc. 31-1 at 11.)  Plaintiff asserts that the "fact that the payments are tied to the number of hours worked" weighs in her favor.  (*Id.*) She notes that weighing against her is that fact that the Ninth Circuit "declined to adopt a per se rule that that per diem payments that vary with hours worked must always be included" in the regular rate of pay. (Doc. 18-1 at 25 (citing *Clarke v. AMN Servs.*, LLC, 987 F.3d 848, 856 (9th

Cir. 2021); *see also* Doc. 18-3 at ¶ 31; Doc. 31-1 at 12.)  Plaintiff points out that the derivative claim for waiting time penalties "faces additional risks rendering it doubtful that any waiting time penalties could actually be recovered in light of several defenses asserted by Anders," including that it is exempt from California Labor Code § 203. (Doc. 18-1 at 26; *see also* Doc. 18-3 at ¶¶ 32–34; Doc. 31-12–13.)  Furthermore, as described in the Court's order granting preliminary approval of the proposed settlement, even if Plaintiff ultimately prevails on its PAGA claim, it is "likely that this Court could exercise its discretion to reduce the amount of PAGA penalties ultimately awarded," given that "that the state of the law on the primary basis for liability in this lawsuit remains murky." (Doc. 29 at 20 (citing *Huff v. Securitas Security Servs. USA, Inc*., 23 Cal. App. 5th 745, 759 (2018)).)

Accordingly, the Court finds that consideration of this factor weighs in favor of granting final approval of the parties' settlement in this action.

2. <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of Maintaining Class Action Status Throughout Trial</u>

The second and third *Churchill* factors, the risk, expense, complexity, and likely duration of further litigation, and the risk of maintaining class action status throughout trial, weigh in favor of approval.  *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d at 1101 (citing *Class Plaintiffs*, 955 F.2d at 1276).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).

Because of the above-described risks, Plaintiff contends that further litigation would increase risk and delay.  (Doc. 31-1 at 11–13.)  Even if Plaintiff demonstrates that Anders had unlawful policies and practices, Plaintiff will still have to present evidence that Anders' conduct was willful.  (*See* Doc. 31-2 at 6.)  Plaintiff will also have to present evidence regarding the extent to which a given employee worked overtime and had the value of their per diems excluded from

their regular rate for purposes of calculating overtime pay.  (*See* Doc. 31-1 at 3.)  Such evidence would likely be individualized and increases the risk that Plaintiff would be unable to obtain class certification and maintain a certified class throughout trial.

The Court finds that consideration of this factor weighs in favor of granting final approval.

3.     Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *see also* Fed. R. Civ. P. 23(e)(2)(C)-(D).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  In addition, the court must consider whether "the proposal treats class members equitably relative to each other" and whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C)-(D).

a.     *Gross settlement amount*

Here, the parties have agreed to a $368,500 GSA, allocated as follows: (1) up to $92,125 (25% of the GSA) for attorney's fees and up to $15,000 for litigation costs; (2) $5,000 service award for Plaintiff; (3) $35,000 in civil PAGA penalties, with $26,250 of the penalties payable to the California Labor and Workforce Development Agency ("LWDA");[2] and (4) up to $20,000 for settlement administration costs.  (Doc. 31-3 at 5–6; *see also* Doc. 18-4 at 5, 15, 17–18).

Plaintiff estimates that the maximum potential damages as to the claims asserted in this action are approximately $873,857.35, making the GSA of $368,500 an approximately 42% recovery of plaintiff's maximum potential claims.  (*See* Doc. 31-1 at 11; Doc. 31-2 at 6; *see also* Doc. 18-1 at 24–15.)  This settlement amount exceeds the range of the percentage recoveries that

---

[2] Pursuant to the PAGA, 75% of the civil PAGA penalties, or $26,250, will go to the LWDA, and 25%, or $8,750, will be allocated to the net settlement amount ("Net Settlement Amount" or "NSA").  (Doc. 31-1 at 6; *see also* Doc. 18-4 at 8–9.)  *See* Cal. Lab. Code § 2699(i).

California district courts—including this court—have found to be reasonable.  *See, e.g., Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325, at *7 (E.D. Cal. May 29, 2018), modified, No. 1:15-cv-01497-DAD-BAM, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) (approving a settlement of about 12% of the estimated maximum damages); *Glass v. UBS Fin. Servs., Inc.*, No. 3:06-cv-04068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement of about 25–35% of the estimated maximum).  In addition, the Court notes that the *pro rata* allocation formula employed here is fair and reasonable because each Settlement Class Member is allocated a payout that scales directly with their overtime hours worked, and any Class Member may dispute the number of overtime attributed to them.  (*See* Doc. 31-3 at 2; Doc. 18-4 at 16, 23.)

According to the settlement administrator, the average gross class payment, exclusive of the PAGA payment, is estimated to be $1,340.41, the median is estimated to be $488.47, the highest is estimated to be $12,276.41, and the minimum is estimated to be $2.42 (which applies to a single individual who worked only 0.15 overtime hours during the class period).  (Doc. 31-3 at 3.)  None of the NSA will revert to Anders because checks that are not cashed before their expiration will be cancelled, and those funds will be transmitted to the California State Controller's Unclaimed Property Fund.  (*See* Doc. 31-1 at 7; Doc. 18-4 at 5, 15, 16, 20.)

As noted above, the Court has neither received objections to the settlement nor have any Class Members sought to opt out of the settlement.  Finally, the Court acknowledges that while "a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes'" (*See* Doc. 29 at 20 (quoting *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal citations and quotation marks omitted)).)

Based on the information presented to the Court, the Court concludes that the amount offered in settlement of this action provides adequate relief for the class.

   *b.* *PAGA penalties*

As described above, the settlement also provides for $35,000 in civil PAGA penalties. (Doc. 31-1 at 6; 18-4 at 18.)  Pursuant to the PAGA, 75% of the civil penalties, or $26,250, will go

to the LWDA, and 25%, or $8,750, will be distributed to aggrieved employees on a *pro rata* basis.[3]

(*Id.*)  *See* Cal. Lab. Code § 2699(i).

Although there is no binding authority setting forth the proper standard of review for PAGA settlements, California district courts "have applied a Rule 23-like standard, asking whether the settlement of the PAGA claims is fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."  *Haralson*, 383 F. Supp. 3d at 972 (internal quotation marks omitted).  This standard is derived principally from the LWDA itself.  In commenting on a proposed settlement including both class action and PAGA claims, the LWDA offered the following guidance:

> It is thus important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing the LWDA's guidance with approval).[4]  Recognizing the distinct issues presented by class actions, this Court is persuaded by the LWDA's reasoning in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA portion of the settlement now before the court.  *See, e.g., Castro v. Paragon Indus., Inc.*, No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at *6 (E.D. Cal. Apr. 27, 2020); *Patel v. Nike Retail Servs., Inc.*, No. 14-cv-04781-RS, 2019 WL 2029061, at *2 (N.D. Cal. May 8, 2019).  Accordingly, the Court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by the PAGA; and (2) are fundamentally fair, reasonable, and adequate in view of the PAGA's public policy goals.

When a proposed settlement involves overlapping class action and PAGA claims, courts may employ a "sliding scale" in determining if the proposed settlement is "fundamentally fair, reasonable, and adequate with reference to the public policies underlying the PAGA."  *O'Connor*,

---

[3] Under the PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees.  Cal. Lab. Code § 2699(a).  An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  *Id.* § 2699(c).

[4] The LWDA has also stated that it "is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action."  *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016) (Doc. 736 at 2–3).

201 F. Supp. 3d at 1134; *see also Haralson*, 383 F. Supp. 3d at 972 (following *O'Connor*); *McClure v. Brand Energy Serv.*, LLC, No. 2:18-cv-01726-KJM-AC, 2021 WL 2168149, at *10 (E.D. Cal. May 27, 2021) (same); *Cooks v. TNG GP*, No. 2:16-cv-01160-KJM-AC, 2020 WL 5535397, at *9–10 (E.D. Cal. Sept. 15, 2020) (same).  As the district court in *O'Conno*r explained:

> For example, if the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled. By providing fair compensation to the class members as employees and substantial monetary relief, a settlement not only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA. Likewise, if the settlement resolves the important question of the status of workers as employees entitled to the protection of the Labor Code or contained substantial injunctive relief, this would support PAGA's interest in "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance."

*Id.* at 1134–1135 (quoting the LWDA's guidance).  At the same time, where "the compensation to the class amounts is relatively modest when compared to the verdict value, the non-monetary relief is of limited benefit to the class, and the settlement does nothing to clarify [aggrieved workers' rights and obligations], the settlement of the non-PAGA claims does not substantially vindicate PAGA."  *Id.* at 1135.  Finally, "where plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment."  *Id.* at 1134.  Plaintiff's special responsibility to other aggrieved workers is especially significant because the "PAGA does not require class action procedures, such as notice and opt-out rights."  *Id.*  Thus,

> [t]he Court must be cognizant of the risk that despite this responsibility, there may be a temptation to include a PAGA claim in a lawsuit to be used merely as a bargaining chip, wherein the rights of individuals who may not even be members of the class and the public may be waived for little additional consideration in order to induce the employer to agree to a settlement with the class.

*Id.*

Plaintiff's counsel estimates a total of $65,000 in PAGA penalties in this action, which was discounted based on the likelihood that this Court could exercise its discretion to reduce the amount of PAGA penalties ultimately awarded.  (Doc. 31-2 at 6–8; *see also* Doc. 31-1 at 11.)  The resulting

$35,000 civil penalty proposed by the settlement thus represents approximately 9% of the $368,500 GSA.  The amount proposed to settle the PAGA claims is consistent with, and in fact exceeds, other PAGA settlements approved by this court.  *See, e.g., Syed v. M-I, LLC*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving PAGA penalties representing 1.4% of the gross settlement fund); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving PAGA penalties representing 0.27% of the gross settlement fund); *Castro*, 2020 WL 1984240, at *15 (approving PAGA penalties representing 2% of the gross settlement fund).

Moreover, in a declaration attached to Plaintiff's motion for final approval, class counsel declared that the proposed settlement was submitted to the LWDA in accordance with PAGA, see Cal. Lab. Code § 2699(l)(2) (requiring that the proposed settlement be submitted to LWDA at the same time that it is submitted to the court).  (Doc. 31-2 at 9.)  The LWDA has not commented or indicated any objection to the settlement.  (*Id.*)  Having reviewed the parties' submission and the terms of the proposed settlement, the Court finds that the settlement amount related to Plaintiff's PAGA claims is fair, reasonable, and adequate considering PAGA's public policy goals.  Thus, the Court finds that the amount offered in settlement of the PAGA claims here weighs in favor of final approval of the settlement.

### 4.   Extent of Discovery Completed and Stage of the Proceedings

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Approval of a class action settlement "is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation."  *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).  The court must consider whether the process by which the parties arrived at their settlement is truly the

product of arm's length bargaining and not collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). These concerns are also reflected in Rule 23(e)(2)'s focus on procedural fairness—whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B).

As detailed in the Court's order granting preliminary approval, the Court is satisfied that the settlement was the result of "genuine, informed, and arm's-length bargaining." (Doc. 29 at 18.) The parties engaged in a private mediation with Lisa Klerman, Esq., an experienced professional mediator, on October 6, 2021. (Doc. 31-2 at 5; Doc. 18-1 at 10.) The mediation took place after approximately seven months of litigation, and before the mediation, Anders provided Plaintiff's counsel with "documents and information pertaining to, among other things, the following: (1) all of Anders' policies, procedures, and practices regarding paying employees, calculating overtime, providing per diem payments, and adjusting or prorating per diems and stipends when employees fail to work minimum required weekly hours; (2) all handbooks applicable to the putative class; (3) all versions of the assignment agreements utilized by Anders during the class period; (4) the average hourly wage paid to putative class members throughout the class period; and (5) the average weekly meals and incidental and lodging per diems payments paid to putative class members throughout the class period." (Doc. 31-1 at 10–11; Doc. 18-3 at ¶ 13.) In addition, before participating in mediation, Plaintiff's counsel obtained from Anders "all weekly payroll data for a random sampling of one-third of the putative class members, as well as payroll data for the entire class reflecting the total number of overtime hours worked by each class member." (Doc. 31-1 at 10–11; Doc. 18-3 ¶ 14.) According to the parties' Settlement Agreement, its terms and conditions "are the result of lengthy, intensive arms-length negotiations between the [p]arties." (Doc. 18-4 at 28.)

Accordingly, the Court concludes that consideration of this factor weighs in favor of granting final approval.

1

      5.      Experience and Views of Counsel

2

      Class counsel Matthew B. Hayes submitted a declaration describing his experience in class

3 and representative action litigation.  (*See* Doc. 31-2 at 2.)  Mr. Hayes graduated from UCLA and

4 started his own law firm in 2011.  (*Id.*)  Mr. Hayes represents that he and his law partner Kye D.

5 Pawlenko have had extensive experience in labor and employment litigation, and have represented

6 litigants in actions in both state and federal court, including employment litigation and wage and

7 hour class actions.  (*Id.* at 2.)  Class counsel has been previously approved as experienced class

8 counsel by state and federal courts throughout California.  (*Id.* at 2–3.)

9

      The Court finds that class counsel's experience and views weigh in favor of granting final

10 approval.

11

      6.      Presence of a Governmental Participant

12

      The Settlement Agreement contemplates payment of $26,250 in civil PAGA penalties to

13 the LWDA under PAGA.  (Doc. 31-1 at 6; Doc. 18-4 at 18.)  Because LWDA is a governmental

14 participant in the settlement, this too weighs in favor of approval of the settlement.  *See Adoma*,

15 913 F. Supp. 2d at 977 (factoring civil PAGA penalties in favor of settlement approval); *Zamora*

16 *v. Ryder Integrated Logistics, Inc.*, No. 3:13-cv-02679-CAB-BGS, 2014 WL 9872803, at *10 (S.D.

17 Cal. Dec. 23, 2014) (same).

18

      7.      Reaction of the Class Members

19

      "It is established that the absence of a large number of objections to a proposed class action

20 settlement raises a strong presumption that the terms of a proposed class settlement action are

21 favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (citing cases).

22 The presumption that a settlement is fair, reasonable, and adequate is particularly strong when there

23 is an absence of a single objection to a proposed class action settlement.  *See id.*; *Barcia v. Contain-*

24 *A-Way, Inc.*, No. 3:07-cv-00938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

25 Nevertheless, "[a] court may appropriately infer that a class action settlement is fair, adequate, and

26 reasonable when few class members object to it."  *Cruz v. Sky Chefs, Inc.*, No. 4:12-cv-02705-

27 DMR, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) (citing *Churchill Vill.*, 361 F.3d at 577).

28

According to Plaintiff, no Class Member has filed an objection to the settlement pending final approval.  (Doc. 31-1 at 16; *see also* Doc. 31-3 at 2–3.)  As a result, currently 100% of the Class Members will be participating in the settlement.  (*Id.*)  Accordingly, consideration of this factor weighs in favor of granting final approval.

### 8.   Subtle Signs of Collusion

The Court now turns to the *Bluetooth* factors to examine whether any "more subtle signs" of collusion recognized by the Ninth Circuit are present here.  *See Bluetooth*, 654 F.3d at 947.

#### a.   *Whether there is disproportionate distribution to counsel*

First, the Court does not find that class counsel is seeking a disproportionate distribution of the settlement.  With an average estimated Class Member recovery of $1,340.41 and a requested award of attorney's fees of $92,125, it does not appear that counsel seeks to receive a disproportionate distribution of the settlement.  *See, e.g.*, *Morales*, 2011 WL 5511767, at *12 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *Castro*, 2021 WL 20242333, at *5, *12 (E.D. Cal. May 21, 2021) (granting final approval of a class action settlement with an average individual class member recovery of $1,070.62 and an award of $1,031,250.00 in attorney's fees).  Here, class counsel's request of $92,125 is approximately 25% of the total settlement value, placing it well within the range that the Ninth Circuit has found acceptable.

#### b.   *Existence of a "clear sailing" agreement*

Next, the Court considers the existence of a "clear sailing" agreement.  In general, a "clear sailing" provision is one in which the parties agree to the "payment of attorneys' fees separate and apart from class funds."  *Bluetooth*., 654 F.3d at 947.  However, the Ninth Circuit has recognized that a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorney's fees up to an agreed upon amount.  *Lane*, 696 F.3d at 832; *Bluetooth*, 654 F.3d at 947.

The Settlement Agreement provides that Anders "will not oppose Class Counsel's application for an award of Attorneys' Fees in an amount equal to one-fourth (25%) of the Gross Settlement Amount comprising Ninety-Two Thousand One Hundred Twenty-Five Dollars and No

Cents ($92,125.00), plus Costs not to exceed Fifteen Thousand Dollars and No Cents ($15,000.00)." (Doc. 18-4 at 17–18.) Thus, the settlement includes a version of a "clear sailing agreement." Nevertheless, the existence of a clear sailing provision is not necessarily fatal to final approval. *See Bluetooth*, 654 F.3d at 948; *see also In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling"). Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Bluetooth*, 654 F.3d at 948 (citing *Staton*, 327 F.3d at 954).

As set forth more fully below, the Court determines the fees to be reasonable based on evidence submitted by class counsel. *See, e.g., Singh v. Roadrunner Intermodal Servs. LLC*, No. 1:15-cv-01497-DAD-BAM, 2019 WL 316814, at *7–8 (E.D. Cal. Jan 24, 2019) (not finding collusion between the parties, despite a clear sailing agreement, where the fee award was analyzed and determined to be reasonable). Moreover, the collusion concerns raised by the clear sailing provision are minimized, however, because any fees not awarded will be distributed to the class, not revert to Anders. *See, e.g., Garcia v. Sclumberger Lift Solutions*, No. 1:18-cv-01261-DAD-JLT, 2020 WL 6886383, *13-14 (E.D. Cal. Nov. 24, 2020).

c.    *Whether there is a reversion to the defendant*

Finally, the parties did not arrange for any unawarded fees to revert to Anders. Instead, the parties acknowledge in the Settlement Agreement that the GSA is "non-reversionary," and fees shall be paid from the GSA. (Doc. 18-4 at 15, 17.) Because any unawarded fees return to the Settlement Amount for distribution to the class, this factor does not support a finding of collusion between the parties.

In light of all of the foregoing, the Court is satisfied that the more subtle signs of collusion noted in *Bluetooth* are not present here and finds that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e). Therefore, the Court will grant Plaintiff's motion for final approval of the parties' class action settlement.

**IV.      ATTORNEY'S FEES, COSTS, SERVICE AWARD, AND ADMINISTRATION EXPENSES**

As noted above, Plaintiff has also submitted a motion seeking attorney's fees, class counsel's litigation expenses, settlement administration expenses to CPT, and a service award for Plaintiff.

### A.      Attorney's Fees

This Court has an "independent obligation to ensure that the award [of attorney's fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorney's fees from the common fund.  *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorney's fees in such cases where the attorney's fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in common fund cases to choose either method.  *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. 2:14-cv-08822-SJO-EX, 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016).  Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).  As noted above, the Ninth Circuit has generally set a 25% benchmark for the award of attorney's fees in common fund cases.  *Id.* at 1047-48; *see also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

Reasons to vary from the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of the lodestar cross-check as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, the Settlement Agreement provides that class counsel will seek an award of 25% of the GSA, equivalent to $92,125. (Doc. 30-1 at 3.) The Court approved Plaintiff's request for attorney's fees on a preliminary basis, finding that the requested fee was reasonable and consistent with the benchmark rate in the Ninth Circuit (Doc. 29 at 23). *See Bluetooth*, 654 F.3d at 947. The Court finds that a fee award of 25% of the GSA is reasonable for several reasons. First, the results obtained by class counsel in this case, which compensate the Settlement Class Members at an average rate of $1,340.41 per class member, with the highest individual payout exceeding $12,000, weigh in favor of approval. (*See* Doc. 31-3 at 3.) This is particularly true given the considerable risk at the outset of this case that class counsel would receive nothing, as described above. *See Jabbari v. Wells Fargo & Co.*, No. 15-CV-02159-VC, 2018 WL 11024841, at *6 (N.D. Cal. June 14, 2018).

In addition, working on a contingent fee basis and undertaking the financial burdens of prosecuting the action support that the reasonableness of the requested attorney's fees. *See id.* (considering, in approving fee award, the "considerable financial burdens that Class Counsel shouldered on a contingency basis."). The Ninth Circuit has recognized that counsel retained on a contingency fee basis is entitled to a premium above their hourly rate to compensate for both the risks and the delay in payment. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734 (9th Cir.

2016); *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016).

The fee award requested in this case is also reasonable when compared to the prevailing higher fees that have been awarded in other similar cases, including previous awards obtained from this class counsel.  (*See* Doc. 30-1 at 3–4.)  The Court also notes the absence of any objection to the settlement or requests for exclusions despite specific notice to the class regarding the amount of attorney's fees counsel sought.  (Doc. 31-3 at 2–3, Doc. 30-2 at 20.)  As such, the Court finds the amount reasonable under the percentage of the fund method.

The Court next turns to the lodestar method to cross-check the reasonableness of the requested attorney's fee award.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 2:06-cv-04149-MMM-SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008)).  According to class counsel, the total lodestar amount is $103,000, which reflects 162.6 hours expended by class counsel.  (Doc. 30-1 at 4–5.)  It is worth noting that class counsel's lodestar is $10,875 less than the requested 25% of the GSA.  In support of this lodestar calculation, class counsel submitted an accounting of the hours they billed, tasks completed, and applicable billing rates.  (*See* Doc. 30-2 at 24–30.)  Class counsel's hourly rates for Messrs. Hayes and Pawlenko are $650 and $600, respectively.  (*Id.*)  The Court finds that these rates are fair and reasonable in this case.  *See Mathien v. Pier 1 Imports (U.S.), Inc.*, No: 1:16-cv-00087-DAD-SAB, 2018 WL 1993727, at *11 (E.D. Cal. Apr. 27, 2018) (accepting hourly rates of $675 and $750 for senior counsel and partners); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017) (accepting hourly rates between $500 and $720 for partners).

For the reasons set forth above, the Court concludes that the lodestar cross-check supports the requested award of $92,125 in attorney's fees, an amount equal to one-fourth of the GSA in this case.

### B.    Costs and Expenses of Class Counsel

Class counsel also seeks to recover the costs and expenses advanced while prosecuting this litigation.  Such awards "should be limited to typical out-of-pocket expenses that are charged to a

1    fee-paying client and should be reasonable and necessary."   *In re Immune Response Secs. Litig.*,

2    497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).   These can include reimbursements for: "(1) meals,

3    hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5)

4    messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts,

5    consultants, and investigators; and (9) mediation fees."   *Id.*

6          Here, class counsel requests reimbursement in the amount $8,277.   (Doc. 30-2 at 7, 32.)

7    The Court has reviewed class counsel's declaration and finds all the charges incurred to be

8    reasonable.   Accordingly, the Court will approve the reimbursement of costs and expenses in the

9    amount requested.

10         **C.    Service Award**

11         Courts frequently approve "service" or "incentive" awards in class action cases.   *West*

12   *Publ'g Corp.*, 563 F.3d at 958-59.   Service awards recognize the effort of class representatives "for

13   work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing

14   the action, and, sometimes, to recognize their willingness to act as a private attorney general."   *Id.*

15   at 958.   The district court evaluates each award individually, using "relevant factors includ[ing] the

16   actions the plaintiff has taken to protect the interests of the class, the degree to which the class has

17   benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing

18   the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."   *Staton*, 327 F.3d at 977 (quoting

19   *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

20         Courts typically find an award of $5,000 to be presumptively reasonable.   *See, e.g.*, *In re*

21   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (endorsing $5,000 service

22   awards to named representatives); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 246 (N.D.

23   Cal. 2015) (collecting cases); *In re Toys R. Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470-72

24   (C.D. Cal. 2014) (awarding plaintiffs $5,000 each "consistent with the amount courts typically

25   award as incentive payments").   Higher amounts can be appropriate, such as in employment actions,

26   where a plaintiff risks retaliation or blacklisting as a result of suing her employer.   *See, e.g.*,

27   *Buccellato v. AT&T Operations, Inc.*, No. 5:10-cv-00463-LHK, 2011 WL 4526673, at *4 (N.D.

28   Cal. June 30, 2011).

Plaintiff seeks a service award of $5,000 for her services in this action.  (Doc. 30-1 at 7.)
Plaintiff contends this amount is fair and reasonable compensation because she actively participated
in the case's prosecution and estimates spending 30 hours on this litigation.  (Doc. 30-2 at 11.)
Plaintiff gathered documents to support the case, assisted with preparing initial disclosures, spoke
with class counsel on a monthly and sometimes weekly basis, reviewed documents produced by
Anders, took off work to participate in a full day mediation, and provided her input in settlement
discussions.  (*See id*. at 10–11.)  Plaintiff also assumed the risk, among other things, that she might
possibly be liable for costs incurred in connection with this case, which exceed the requested award.
(*Id*. at 9.)   Plaintiff indicates that she is currently unemployed, and that serving as class
representative has made it more difficult for her to find employment in the healthcare industry.  (*Id*.
at 10.)

Although the service award sought is roughly four times the average amount each Class
Member could expect to receive from the proposed settlement (*see id*. at 2), it is, as set forth above,
equal to the amount typically awarded by courts in the Ninth Circuit, and is less than the amount
awarded in similar circumstances.  *See, e.g.*, *Castro*, 2021 WL 2042333, at *13 (granting $10,000
award for 70 hours of work over three years, reflecting 0.025% of the gross settlement amount);
*Acosta v. Evergreen Moneysource Mortg. Co.*, No. 2:17-cv-00466-KJM-DB, 2019 WL 6051117,
at *18 (E.D. Cal. Nov. 15, 2019) (granting $10,000 award for 40 hours of work, reflecting 2.85%
of the gross settlement amount); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG,
2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving a service award of $7,500 to each
class representative where average class recovery was approximately $500).   Considering
Plaintiff's supporting declaration detailing her assistance with this case, the Court finds that the
requested service payment of $5,000 is fair and reasonable.  Accordingly, the Court will award the
service payment as requested.

**D.      Settlement Administration Expenses**

The Court previously approved the appointment of CPT Group, Inc as the settlement
administrator for this action.  (Doc. 29 at 28.)  According to the declaration of Tarus Dancy, the
settlement administrator, the total cost for administration of this settlement, including fees incurred

and future costs for completion, is $8,250.  (Doc. 30-2 at 17.)  This amount is consistent with, and lower than, other settlements submitted to this Court.  *See, e.g.*, *Castro*, 2020 WL 1984240, at *19 (administration costs of $15,000 for a $3.75 million settlement); *Gonzalez v. CoreCivic of Tennessee, LLC*, No. 1:16-cv-01891-DAD-JLT, 2020 WL 1475991, at *14 (E.D. Cal. Mar. 26, 2020) (administration costs of $15,000 for a $3.2 million settlement); *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5 (E.D. Cal. Apr. 19, 2017) (administration costs of $94,000 for a $25 million settlement); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *7 (E.D. Cal. Jan. 11, 2017) (administration costs of $45,000 for a $4.5 million settlement).  The Court finds these administration costs reasonable and will direct payment in the requested amount.

## V.      CONCLUSION AND ORDER

Accordingly:

1.      The hearing set for May 3, 2023, is VACATED;

2.      The proposed class identified in the Settlement Agreement (Doc. 18-4) is certified for settlement purposes;

3.      Plaintiff's motion for final approval of a class action settlement (Doc. 31) is GRANTED, and the Court approves the settlement as fair, reasonable, and adequate;

4.      Named plaintiff Lisa Swain is confirmed as class representative; Plaintiff's counsel Matthew B. Hayes and Kye D. Pawlenko of Hayes Pawlenko LLP are confirmed as class counsel; and CPT Group, Inc. is confirmed as the settlement administrator;

5.      Plaintiff's Fair Labor Standards Act ("FLSA") claim is dismissed without prejudice (*see* Doc. 18-4 at 20);

6.      Plaintiff's motion for attorney's fees, costs, service award, and administrative expenses (Doc. 30) is GRANTED;

7.      The Court awards the following sums:

        a.      Class counsel shall receive $92,125 in attorney's fees and $8,277 in expenses.  Class counsel shall not seek or obtain any other compensation or reimbursement from Anders, Plaintiff, or Class Members;

1             b.      Plaintiff shall receive $5,000 as a service award;

2             c.      CPT Group, Inc. shall receive $8,250 in settlement administration costs; and

3             d.      The parties shall direct payment of 75 percent of the settlement allocated to

4    the PAGA payment, or $26,250, to the California Labor and Workforce

5    Development Agency as required by California law, and the remainder of

6    the PAGA payment, or $8,750, shall be distributed per the Settlement

7    Agreement;

8    8.    The parties are directed to effectuate all terms of the Settlement Agreement (Doc.

9    18-4) and any deadlines or procedures for distribution set forth therein;

10    9.    Except for Plaintiff's FLSA claim (see above), this action is dismissed with

11    prejudice, with the Court specifically retaining jurisdiction over this action for the

12    purpose of enforcing the parties' settlement agreement; and

13    10.    The Clerk of the Court is directed to close this case.

14    IT IS SO ORDERED.

15    Dated:   **April 17, 2023**                         */s/ Sheila K. Oberto*

16                                         UNITED STATES MAGISTRATE JUDGE